# ORIGINAL

RECEIVED IN
The Court of Appeals
Sixth District

JAN 2 8 2015
P. 9. 2(b)
Texarkana, Texas
Debra Autrey, Clerk

## IN THE COURT OF APPEALS FOR
## THE SIXTH COURT OF APPEALS DISTRICT
## TEXARKANA, TEXAS

FILED IN
The Court of Appeals
Sixth District

'JAN 2 8 2015

Texarkana, Texas
Debra K. Autrey, Clerk

| | |
|---|---|
| CAROL PASELK § | |
| § | |
| Appellant § | |
| § | Case No. 06-14-00047-CV |
| vs. § | |
| § | |
| JUSTICE OF THE PEACE, § | |
| PRECINCT 1, YVONNE KING § | |
| § | |
| Appellee § | |

## APPELLANT'S MOTION FOR REHEARING

TO THE HONORABLE SIXTH COURT OF APPEALS COMES NOW, Appellant, Carol Paselk, in the interest of justice and fairness, brings her "Motion For Rehearing," and humbly asks this Honorable Court to reconsider their Opinion in the matter of the Petition For Certiorari and the necessity to vacate the already null and void "Order Awarding Possession of Seized Horses" (hereinafter the "Order") issued by Justice of The Peace, Precinct 1, Yvonne King, in violation of Appellant Carol Paselk's Constitutionally protected and guaranteed rights. In support hereof, Appellant shows the following:

---

*Appellant's Motion For Rehearing*                                      *pg 1 of 25 pages*

1. Rather than "re-state" and "re-write" all the violations committed against Appellant Paselk's Constitutionally protected and guaranteed rights, and re-include all the EXHIBITS already provided to this Court, Appellant hereby incorporates the following items into this Motion For Rehearing, the same as if set forth verbatim herein:

    1. Petition For Writ of Certiorari (C.R. pgs. 5-60)

    2. Motion To Vacate Void Order (C.R. pgs. 111-130)

    3. Supplement of Brand New Case Law (C.R. pgs. 135-146)

    4. Appellant's Amended Brief, filed in this case.

    5. Appellant's Reply Brief

    6. Challenge To Constitutionality of State Statute, filed in this case.

    7. All other documents Appellant has filed in this Appeal, Case No. 06-14-00047-CV

2. All of the arguments, citations of law, and exhibits contained in the above mentioned documents are considered to be incorporated into the language of this Motion For Rehearing, as if mentioned for each item listed herein.

3. Appellant's Brief in this case was sent to the Court on August 29, 2014.

4. Appellant's Amended Brief in this case was sent to the Court on September 9, 2014.

5. Appellant has filed this Appeal, to appeal the denial of her Petition For Writ of Certiorari by the Hopkins County Court (C.R. pg. 5), and denial of her Motion To Vacate Void Order Issued By The Justice Court (C.R. pg. 111) seeking relief from the already null and void "Order" issued by the justice court. (C.R. pg. 55)

6. Article 14, Section 1 of the Texas Constitution, and Texas Govt. Code 601.005 require all Appellate Court Judges to file a sworn, notarized Oath of Office Form 2204 with the Secretary of State, before taking the oral oath, and before taking office. The Oath of Office is a declaration made by the Appellate Judge that he or she will **preserve, protect, and defend the Constitution** and laws of the United States, and of the state of Texas. The actual language of oath contains the following:

> IN THE NAME AND BY THE AUTHORITY OF THE STATE OF
> TEXAS, I, _____. do solemnly swear (or affirm). that I will
> faithfully execute the duties of the office of _____
> or the State of Texas, and **will to the best of my ability preserve,
> protect, and defend the Constitution** and laws of the United States,
> and of this State, so help me God.
> Signature of Officer _____
> *[bold and underline emphasis added.]*   **(See EXHIBIT No. 1)**

7. Since the Judges of this Court have all sworn an oath to "preserve, protect, and defend the Constitution and laws of the United States, and of this State" they are obligated by the Taxpayers to do exactly that. Paselk is a taxpayer whom the Judges of this Court have sworn to protect.

8. The Constitution of the United States was created to protect the citizens from infringement upon their rights by the "government".

9. Article 6, Clause 2 of the United States Constitution is known as the Supremacy Clause, which establishes the United States Constitution, federal statutes, and treaties as "the supreme law of the land."

10. Appellant has clearly, concisely, and with established case law shown this Court that the "Order" which is the subject of this case, is issued in complete violation of this Appellant's Constitutionally protected and guaranteed rights. The main violations of this Appellant's Constitutionally protected rights, spelled out at length in the items incorporated into this Motion For Rehearing in point No. 1 above, include, but are not limited to:

   1. The Warrant For Animal Seizure is an outlawed "general warrant" prohibited, and in violation of Appellant's protected rights, by the 4th

Amendment of the U.S. Constitution, as well as Article 1, Section 9 of the Texas Constitution, Texas Code of Criminal Procedure, Chapter 18, and Texas Health & Safety Code 821.022(a). This Court has failed to address this serious issue.

2. No Veterinarian was on-site at the time of the seizure to professionally evaluate ANY horse and establish its condition BEFORE it was taken from Appellant's property, thus NO chain of custody of the evidence (horses) was established, and therefore NO admissible evidence can be established, in violation of Appellant's Constitutionally protected and guaranteed rights under the 4th, 5th, and 14th Amendments. This Court has failed to address this serious issue.

3. The horses were immediately removed from Hopkins County by private citizens who had no court order authorizing their removal and no court order specifying the manner in which the animals were to be kept, all in violation of Texas Code of Criminal Procedure § 18.10 and § 18.11, which violates Paselk's protected and guaranteed rights under the 4th, 5th, and 14th Amendments. This Court has failed to address this serious issue.

4. Private citizens, who have no "official" capacity or authority, and who have ONLY obtained permission to operate "tax-free" and operating under the

guise of animal welfare, conducted unwarranted, unauthorized searches and seizures of blood and fecal samples in violation of Paselk's 4th amendment protections and violation of right to privacy protections of the 9th and 10th amendments. This Court has failed to address this serious issue.

5. Photos of horses found six days AFTER they were removed from Paselk's farm show horses in good condition were taken, nullifying the "Order" and nullifying the allegation that these horses had been cruelly treated. In fact, the photos document that they were intentionally housed by their so called "rescuers" in conditions to cause them to become injured. This Court has failed to address this serious issue.

6. Appellant was provided NO proper notice of which particular animal was to be the subject of the "hearing" held in layman non-lawyer Justice of the Peace Yvonne King's court, in violation of Paselk's protected and guaranteed rights under the 5th and 14th Amendments. The only notice Paselk received was stated, "to determine whether THE animal has been cruelly treated." NO Thoroughbred breed horses were listed on the Warrant or on the Application, yet supposedly King considered each and every Thoroughbred horse taken from Appellant's farm, obviously without notice proper notice to Paselk. NO geldings were listed on the Application or the

Warrant, yet supposedly Kind considered the two geldings which were taken from Paselk's farm, obviously without proper notice to Paselk. Any reasonably minded person can NOT tell which particular horse was to be the subject of the hearing held in King's court, based on the ONLY notice of this hearing found on the face of the Warrant, especially when horses in good condition were wrongfully included in the "Order", in direct violation of Texas Health & Safety Code § 821.023(g), and in violation of Paselk's Constitutionally protected and guaranteed rights under the 5th and 14th Amendments. This Court has failed to address this serious issue.

7. No reasonably minded person can possibly know WHICH animal was to be the subject of the hearing, as noticed on the face of the Warrant, especially when animals in good condition were taken from Paselk's farm, and not returned in compliance with THSC § 821.023(g). This Court has failed to address this serious issue.

8. There is NO way to justify the "Order" as it was written to take 57 horses from Paselk, which includes horses in good condition, in the face of the following:

1. The fact that there was NO professional Veterinarian on-site to provide professional evaluation of the condition of any horse

before it was removed from the farm. Without this professional evaluation BEFORE their removal, there is no way for the State to PROVE that the condition of the horses was not intentionally altered AFTER they were removed. In fact, photos taken 6 days AFTER the horses were taken clearly show the intention to intentionally alter the condition of at least 12 stallions.

2. In his official eyewitness report, Sgt. Tanner Crump states: "I do not feel that the horses are in need of immediate care or removal from the owner", (C.R. pg. 44) Crump further stated, "Not all of the horses were poor...Most of the horses that were poor were older horses and it is expected that they would not look as good as horses that were younger."(C.R. pg. 44)

3. Testimony of State's witness Melanie DeAeth; founder and president of True Blue Animal Rescue (R.R., State v. Paselk, CR0926723 & CR0926724, Vol. 3 of 6, pg. , lines 4-7), when asked by defense attorney Steve Lilley "How much assistance did you offer my client?" DeAeth responded, " " I think I got the board to approve purchasing $200. worth of hay, and then we approved purchasing 25 wormers." Yet, DeAeth and others had

lied to Hopkins County Sheriff Department they had been supplying continuing support for Paselk for months, to instigate the seizure, which they became the sole beneficiaries of.

4. Chief Deputy Ricky Morgan Testified, " She would probably still have the horses today because she was attempting to feed them" as his response to learning that the "rescues" were not truthful. (R.R. State v. Paselk, CR0926723 & CR0926724, Vol. 3 of 6, pg. 285, line 25, and pg. 286, line 1.)(EXHIBIT No. 2) Photos of hay purchased and fed shown as EXHIBIT No. 1 of Appellant's Reply Brief, clearly shows that the State's witnesses were lying that they were withdrawing support from Paselk, when they testified to only a one time offer of support that was delivered 4 months before the seizure! DeAeth or none of the other States witnesses provided any ongoing support for Paselk, this their claims were simply lies to the court.

5. Photos of Hay and grain in the barn on 05/03/2009 and again on 05/09/2009, along with receipts presented to court, clearly show that Paselk was providing for the horses at the time they were seized. (EXHIBIT NO. 1 – Appellant's Reply Brief).

This Court has failed to address these very serious issues, which very clearly show that Paselk was not cruelly treating any horses, and which verify that the "Order" is in fact invalid, and null and void.

9. Paselk has never been given her right to a Trial by Jury, which is INVIOLATE. This denial of her right to a Trial by Jury affecting this matter of her property rights, is in complete violation of her Constitutionally protected right guaranteed by the 5th and 14th Amendments, and is very succinctly upheld in *Granger v. Folk*; citing *Clayton v. Clayton*. This Court has failed to address this serious issue.

11. This Court attempts to justify their refusal to acknowledge the blatant violations of Appellant Paselk's Constitutionally protected and guaranteed rights, by referring to their upholding of misdemeanor convictions against Paselk, determined 5 months AFTER this "Order" was issued, even in the face of so many violations of this Appellant's Constitutionally protected and guaranteed rights, it is appalling. Not only do those convictions have NOTHING to do with this "Order" issued 5 months BEFORE any trial against Paselk for allegations of misdemeanor cruelty to a livestock animal, but IF this "Order" had been properly vacated, as it should have been at the time it was issued, there would be NO convictions against this Appellant. With ALL DUE RESPECT and REVERENCE for the honor and

sanctity of the long standing institution of this honorable Court of Appeals, this Appellant is still compelled to state: for the Judges to attempt to stand on convictions that ANY Taxpayer can see have been obtained in absolute violation of numerous of this Appellant's Constitutionally protected and guaranteed rights is not only a serious affront to the honor of the institution known as the Texas Court of Appeals, but it is also a serious affront to the SOLEMN Oath sworn by the Judges of this Court, and a serious affront to Almighty God, before whom the Judges of this Court have made their sworn Oath. It is the job of the Judges to administer Justice, and to preserve, protect, and defend the rights of this Appellant which are protected and guaranteed by the U.S. The Judges of this honorable Court have not been hired to seek a way to deny this Appellant the protections and guarantees she is entitled to under the Constitution of the United States. This Court has failed to address this serious issue.

12. The Statutory scheme and the manner of its implementation in this case constitute government action so arbitrary that it violates Plaintiffs protected rights to due process. The "Order" which is the subject of this case, is illegal and is issued by arbitrary government action. This Court has failed to address this serious issue.

13. Section 241 of Title 18 of the US Code is the civil rights conspiracy statute. Section 241 makes it unlawful for two or more persons to agree together to injure,

threaten, or intimidate a person in any state, territory or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or the laws of the Unites States, (or because of his/her having exercised the same). Unlike most conspiracy statutes, Section 241 does not require that one of the conspirators commit an overt act prior to the conspiracy becoming a crime. The offense is punishable by a range of imprisonment up to a life term or the death penalty, depending upon the circumstances of the crime, and the resulting injury, if any. The actual language of TITLE 18, U.S.C., SECTION 241 states:

> "If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same;... They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death."

Paselk contends that the actions and conduct of those involved in this case borders on violations of USC Title 18, Section 241. This Court has failed to address this very serious issue.

14. In making their denial of this Appellant's Petition For Writ of Certiorari, and ultimately their denial of this Appellant's Motion To Vacate Already Void Order"

this Court is holding to a non-jurisdictional Rule – TRCP Rule 579 - rather than to uphold and defend the Constitutionally protected an guaranteed rights of this Appellant, which this court has been organized and sustained by the Taxpayers to protect. The Florida Supreme Court has shown their very deep wisdom and their loyalty to their duty to their sworn oath to preserve, protect, and defend the Constitution of the U.S., which is to ultimately to preserve and protect, and defend the rights of this Appellant protected and guaranteed by the U.S. Constitution. In a case where a Petition For Writ of Certiorari was filed two years after final judgment, The Florida Supreme Court upheld:

> "We are, therefore, confronted with the dilemma as to whether we
> ...here strictiv to the Rule and deny jurisdiction to the petitioner
> on the merits, or whether we will waive the Rule and exercise our
> constitutional responsibility to take jurisdiction of the case. Where a
> rule which is not jurisdictional, but directory only, conflicts with the
> justice of the case, it is justice and not the rule which must prevail.
> Rules should implement rather than prevent the administration of
> justice." *Atlantic Coast Line R. Co. v. Mack*, 64 So. 2d 304 (Fla. S.Ct.
> 1952).

This Court has failed to address this serious issue.

15. This Court's denial of Appellant's Petition For Writ of Certiorari and ultimately Motion To Vacate Already Void Order, is this Court's denial that TRCP Rule 579 is a "directive" only and is not jurisdictional. Although this Court has the prerogative to waive the Rule or not, in the face of such blatant violations of Paselk's Constitutionally protected and guaranteed rights, it becomes quite plain

that this Court MUST exercise its constitutional responsibility to take jurisdiction of this case so that Justice may be administered in this case and the Writ of Certiorari issued. This Court's denial of Paselk's Petition For Writ of Certiorari based solely on the procedural directive of TRCP Rule 579 is preventing the true and correct administration of justice, the preservation, protections, and defense of the Constitution of the United States, and is in complete denial of Paselk's Constitutionally protected and guaranteed rights. In this case, Justice and NOT the Rule must prevail. This Court has failed to address this serious issue.

16. It is now this Court's responsibility to consider if they agree with the Florida Supreme Court that (1) Justice rather than the Rule must prevail, and (2) if they have the duty and responsibility to exercise their sworn constitutional responsibility to take jurisdiction of the case, so that Justice may prevail. This Court has failed to address this serious issue.

17. This Court must must address the issue of whether TRCP Rule 576 must be upheld, no matter what, in denial of this Court's sworn duty and responsibility to protect and defend this Appellant's Constitutionally protected and guaranteed rights. This Court has failed to address this serious issue.

18. The Court fails to consider that an "Order" issued by a layman non-lawyer J.P. court is NOT "res judicata". You, as a Judge, are a human being who has been

given the Title and office BY the Trust of your constituents. You have sworn before Almighty God, that you will preserve, protect, and defend the Constitution of the United States, which means preserving, protecting, and defending the Constitutionally protected and guaranteed rights of the people whom you serve. After seeing everything in the documents listed in the first point of this Motion For Rehearing (point No. 1 above), there are four questions that not only this Appellant, but the Taxpayers of Texas believe you MUST answer:

1. "What reason can you now give that will justify you NOT granting Appellant Paselk's Petition For Writ of Certiorari, in the face of all the clearly demonstrated, evidenced, and upheld violations of Paselk's Constitutionally protected and guaranteed rights?"

2. "Do you REALLY believe that a layman, non-lawyer Justice of the Peace, such as Yvonne King, who has only two years of college education, has the education, training in Constitutional law, and lawful right to "Order" an entire herd of horses simply be given to private citizens, (who possess no authority other than permission to operate tax-free), without providing the inviolate right to a trial by jury, in a court proceeding lasting only a few hours, and including horses in good condition in that "Order", in direct violation of the protections codified by the Legislature found in Texas

Health & Safety Code § 821.023(g)?"

3. "What reason can you now give that will justify NOT vacating the "Order" which includes taking horses in good condition, in direct violation of the protections codified by the Legislature found in Texas Health & Safety Code § 821.023(g)?"

4. The "Order" gives the entire herd of horses to private citizens operating "tax-free". The State, nor the Taxpayers of this State, have received NO benefit from the "Order" which simply gives an entire herd of horses to private citizens, who have used these horses for their own gain. How does this Court justify NOT vacating the "Order" when this "Order" has NOT benefited the State or the Taxpayers of this State in any way?"

This Court has failed to address these very serious issues, for which Paselk and the Taxpayers of the State of Texas are waiting an answer.

19. This Court has NOT provided any answer to this Appellant's Challenge to the Constitutionality of State Statute, which can not be denied, in the face of such serious violations of Constitutionally protected and guaranteed rights as have been perpetrated against Paselk. This Court has a sworn duty, responsibility, and obligation to the Taxpayers and before Almighty God to provide answers to the very real and very serious questions presented by the Challenge to the

Constitutionality of State Statute filed in this case, which focuses on the Constitutionality of THSC 821. This Court has failed to address this serious issue.

20. The Court attempts to justify their denial of Paselk's Petition For Writ of Certiorari by stating in footnote No. 2 on page 2 of the "Opinion" ... "we upheld both convictions"... yet this Court does NOT address the fact that the convictions were obtained in violation of Paselk's Constitutionally protected rights 5 months AFTER the "Order", which is the subject of this case, was issued. The misdemeanor convictions themselves are a violation of historically held "human rights" and were obtained in violation of Paselk's Constitutionally protected and guaranteed rights. The misdemeanor convictions violate Paselk's Constitutionally protected rights and must be set aside. The misdemeanor convictions are a violation of Paselk's Constitutionally protected property and liberty rights. The Court is obligated to look at this "Order" without any reference to the misdemeanor convictions 5 months AFTER the "Order" was issued. The issuance of the "Order" was a violation of Paselk's Constitutionally protected and guaranteed rights, as well as in violation of Texas Health & Safety Code 821.023(g), 5 months BEFORE any judgment of conviction was issued.

21. This Court has failed to address the fact that horses in good condition were

wrongfully taken from Paselk in violation of the protections of Texas Health & Safety Code 821.023(g). The Court has never addressed this very serious issue, which has already been determined by the Court in *Gracia v. State* (footnote 1), where the Court held that animals not found to have been cruelly treated were returned to the owners. This Court has the duty, and responsibilty to uphold their sworn oath to preserve, protect, and defend the Constitution of the US, and also the Constitution and laws of the State of Texas. Texas Health & Safety Code 821.023(g) very clearly states, "The The court **SHALL** order the animal returned to the owner if the court does not find that the animal's owner has cruelly treated the animal."[*capitals, bold, and underline emphasis added*] The word **SHALL** is not arbitrary, and can NOT be ignored. The Legislature very clearly made its intent known by using the word **SHALL**. King failed to adhere to the directive of **SHALL ORDER**, and wrongfully included horses in good condition in the "Order". As such, the "Order" is invalid, null and void, and must be immediately vacated! This Court has failed to address this very serious issue.

22. In their Opinion, the Court makes many statements for which there has never been any "evidence" presented. This Court has failed to address this serious issue.

23. This Court states, "After the hearing, King determined that Paselk had cruelly treated fifty-seven horses, divested her of ownership of the animals, and ordered

them to be given to the True Blue Animal Rescue and the Bluebonnet Equine Rescue Service. See Tex. Health & Safety Code Ann. § 821.023(d), (e) (West 2010). First of all, King has NEVER produced any documentation to show that she in fact considered each and every animal as being cruelly treated. According to Tex. Health & Safety Code 821.023(g), and as upheld in *Gracia v. State*, King has NEVER produced any documentation to show that each and every horse was found to have been cruelly treated, in what manner the horse was found to have been cruelly treated, and what evidence and documentation prove that the particular horse was cruelly treated. King is obligated to issue an Order to return animals that were in good condition, according to Texas Health & Safety Code 821.023(g). Photos of horses found at the Bartley Auction & Stockyard six days AFTER being removed from Paselk's farm show horses in good condition were taken from Appellant Paselk's farm.

1. In his official eyewitness report, Sgt. Tanner Crump states: "<u>I do not feel that the horses are in need of immediate care or removal from the owner</u>", (C.R. pg. 44) Crump further stated, "Not all of the horses were poor...Most of the horses that were poor were older horses and it is expected that they would not look as good as horses that were younger."(C.R. pg. 44)

2. Testimony of State's witness Melanie DeAeth; founder and president of True Blue Animal Rescue (R.R., State v. Paselk, CR0926723 &

CR0926724, Vol. 3 of 6, pg. , lines 4-7), when asked by defense attorney Steve Lilley "How much assistance did you offer my client?" DeAeth responded, " " I think I got the board to approve purchasing $200. worth of hay, and then we approved purchasing 25 wormers." Yet, DeAeth and others had lied to Hopkins County Sheriff Department they had been supplying continuing support for Paselk for months, to instigate the seizure, which they became the sole beneficiaries of.

3. Chief Deputy Ricky Morgan Testified, " She would probably still have the horses today because she was attempting to feed them" as his response to learning that the "rescues" were not truthful. (EXHIBIT No. 2) Photos of hay purchased and fed shown as EXHIBIT No. 1 of Appellant's Reply Brief, clearly shows that the State's witnesses were lying that they were withdrawing support from Paselk, when they testified to only a one time offer of support that was delivered 4 months before the seizure!

4. All of these items show that King could NOT find all 57 horses to have been cruelly treated, therefore according to Tex. Health & Safety Code 821.023(g) King was obligated to order horses returned to Appellant. The "Order" is NOT valid because it takes horses in good condition from Appellant Paselk, in violation of the protections of THSC 821.023(g), and this Court has the duty, and responsibility according to their Sworn Oath

before the Taxpayers of this State and before Almighty God, to so state.

## CONCLUSION

For these reasons, Appellant Paselk humbly prays that this honorable Court will grant her Motion For Rehearing, Petition For Writ of Certiorari, and her Motion To Vacate Void Order, and immediately vacate the already null and void "Order Awarding Possession of Seized Horses" issued May 20, 2009, by Justice of The Peace, Precinct 1, Yvonne King, which wrongfully includes the taking of horses in good condition, which directly violates the protections codified by the Legislature in Texas Health & Safety Code 821.023(g). The fact that horses in good condition were wrongfully included in the "Order" in violation of Texas Health & Safety Code 821.023(g), has nothing to do with misdemeanor convictions against Paselk issued 5 months later. The violations of Order according to THSC 821.023(g), along with the complete violation of Paselk's Constitutionally protected and guaranteed rights are what this Court must concern itself with in this case. This Court is obligated to vacate the "Order" based on the fact that horses in good condition were wrongfully included in the "Order", in direct violation of the protections codified by the Legislature in THSC 821.023(g), and upheld by this Court in *Gracia v. State* (footnote 1). Appellant also requests this Court order such other and further relief, at law or in equity, to which Appellant is justly entitled. Appellant Paselk further requests that this honorable Court will review all of Appellant's

submissions to the Justice Court and the County Court requesting vacating of this "Order" if this Court feels it needs more indepth information.

Respectfully Submitted,

Carol Paselk
Pro Se Appellant
P.O. Box 1284
Emory, Texas 75440
(940) 435-3210

## CERTIFICATE OF COMPLIANCE

Pursuant to TRAP Rule 9.4(i)(3), in making this Certificate of Compliance, I am relying on the word count provided by the Libre Office 4.2.5.2 computer software used to prepare this document. In compliance with TRAP Rule 9.4(i)(2)(B), according to the Libre Office word-count function, this Appellant's Motion To Vacate Void Order contains 4,937 words. In compliance with TRAP 9.4(e), the typeface used in this Motion is no smaller than 14-point, except for footnotes, which are no smaller than 12-point.

Carol Paselk, Pro Se Appellant
P.O. Box 1284
Emory, Texas 75440

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing "Motion For Appellant's Amended Brief" has been sent by first class USPS mail to Justice of The Peace, Precinct 1, Yvonne King, 128 Main Street, Suite K, Sulphur Springs, TX 75482, on the _____ day of _____, 2015.

Carol Paselk, Pro Se Appellant
P.O. Box 1284
Emory, Texas 75440

Form #2204   Rev. 10/2011

Submit to:
**SECRETARY OF STATE**
Government Filings Section
P O Box 12887
Austin, TX 78711-2887
512-463-6334

**OATH OF OFFICE**

This space reserved for office use

Filing Fee: None

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS,

I, _____ , do solemnly swear (or affirm), that I will faithfully execute the duties of the office of _____ of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God.

_____
Signature of Officer

State of _____ )
County of _____ )

Sworn to and subscribed before me this

_____ day of _____, 20____.

(seal)

_____
Signature of Notary Public or Other Officer
Administering Oath

_____
Printed or Typed Name

| Print | Reset |

Form 2204                    2

# EXHIBIT No. 2

STATE VS. PASELK - VOLUME 3 OF 6 - 10/27/09

week's time.

A. Well, at that particular time when Sergeant Crump went out there, he didn't now of any history of Ms. Paselk. He kind of felt sorry for her, and from what she was telling him, he was going to give her time to -- he saw feed. He saw wormer. He didn't know anything about the rescue group's prior dealings with her, and she just wasn't doing anything. I mean, the day we went out to serve the seizure papers, the feed was still there, and the wormer was still there in the bucket, and she hadn't even attempted to do anything. So after Lieutenant Turner and I had discussed it, we just kind of took it upon our own to go see Ms. Rabe and get the seizure papers because the horses would be starved to death.

Q. And on the flip side of that, if what she had told Mr. Crump compared to what we knew of the rescue groups and their involvement had been true, if they were still going to work with her, if there was going to continue to be a supply of food or wormer, if what she had told Mr. Crump he wrongly or rightly believed, if that were true, would you have a different opinion?

A. I would have. She would probably still have the horses today because she was attempting to feed

KAYLA R. SCOTT, CSR, RPR          (214) 504-9424

STATE VS. PASELK - VOLUME 3 OF 6 - 10/27/09

them.

MS. RABE: I will pass the witness.

FURTHER RECROSS-EXAMINATION

BY MR. LILLEY